Chevene B. KING, Jr., Plaintiff,

v.

Richard THORNBURG, et al., Defendants.

Civ. No. 288–144.

United States District Court, S.D. Georgia, Brunswick Division.

April 17, 1991.

---

Fletcher Farrington, Savannah, Ga., for plaintiff.

Vincent M. Garvey, Neal Dittersdorf, Dept. Of Justice, Washington, D.C., for defendants.

OWENS, Chief Judge, Sitting by Designation.

Plaintiff Chevene B. King, Jr., an Albany, Georgia attorney, as a result of being (1) arrested by deputy United States marshals while in Brunswick, Georgia for fail-

ing to arrange for his law partner or an associate to appear in his stead before a United States magistrate judge at a hearing scheduled in Savannah, Georgia, (2) handcuffed and waist chained, and (3) then transported to the United States Courthouse in Savannah, brought this civil action asserting causes of action under the Fourth Amendment to the Constitution of the United States. The plaintiff and the defendants each have moved for summary judgment. Rule 56 Fed.R.Civ.Proc.

The entire file, the record, the relevant authorities and the arguments of counsel having been carefully considered, the following constitutes the court's ruling on those motions.

## THE MATERIAL UNDISPUTED FACTS

A United States Magistrate Judge of the Southern District of Georgia scheduled a hearing in the criminal property forfeiture case of *United States v. Blackshear, et al.,* for March 31, 1988 to be held in Savannah, Georgia, and notified plaintiff King, who represented one of the defendants, to be present.

Several days before the date of the hearing plaintiff telephoned the magistrate judge's office and informed his secretary that he would be unable to be present on March 31, 1991, because he was then engaged in a criminal trial in the Superior Court of Glynn County, Brunswick, Georgia and requested a continuance. Upon the magistrate judge's instructions, the continuance was denied. Plaintiff King then informed the magistrate judge's secretary that his partner, Carl Bryant, Esquire, would possibly be able to appear in his stead.

On the morning of March 31, plaintiff King was still engaged in a criminal trial in Glynn County Superior Court and therefore could not appear. Plaintiff's partner Carl Bryant had to appear in Dougherty County Superior Court in Albany, Georgia on the morning of March 31, 1991. He telephoned the magistrate judge's office to advise him

that he was in Superior Court in Albany, Georgia on another matter and would not be able to appear in plaintiff King's stead in Savannah.

Upon hearing this the magistrate judge telephoned the defendant, Chief Deputy Marshal Thomas M. Brown, and told the chief deputy that he had a lawyer who had not shown for a hearing and that he wanted him picked up in Brunswick and brought to the courthouse in Savannah. The chief deputy instructed two deputies to carry out the magistrate judge's instructions. One of those deputies, Philip Duncan, talked to the magistrate judge and was advised that plaintiff was on trial in Glynn County Superior Court, Brunswick, Georgia and was to be taken into custody at the conclusion of that trial and brought to Savannah.

Deputy Duncan testified that he told the magistrate judge that they would take plaintiff into custody, but advised the magistrate judge that if he wanted plaintiff taken into custody they would have to use restraints. The magistrate judge, nevertheless, advised that he wanted plaintiff taken into custody, but to do so discreetly.

Deputies Duncan and Heifferon then drove from Savannah, Georgia to Brunswick, Georgia, waited until the criminal trial plaintiff was involved in concluded, invited him outside where he was handcuffed and waist chained, and then transported him to Savannah, Georgia. There he was taken before the magistrate judge.

At the time of plaintiff's arrest no written order had been issued by the Magistrate Judge. The next day the magistrate Judge entered a written order.

## DISCUSSION

■ Plaintiff's first contention is that Attorney General Richard Thornburg[1] and Stanley Morris, as Director of the Marshals Service, promulgated and adopted policies and procedures regarding the seizure of persons within the jurisdiction of the Unit-

1. Attorney General Richard Thornburg has been substituted for former Attorney General Edwin Meese.

ed States that are clearly in excess of their statutory and constitutional authority.

In particular, plaintiff challenges the United States Marshals Service's written restraint policy which provides:

a. *General.*

1) These provisions apply to the use of restraints on all prisoners (*i.e.*, adult, juvenile, male and female).

2) These are minimum requirements only. USMS personnel may use additional authorized restraining equipment.

3) USMS personnel are advised that the burden of justification when any exception is made to use less than the minimum requirements rests upon the employee that authorizes the exception.

c. *Automobiles and Station Wagons, Prisoner Buses, and Vans*

a) When prisoners are transported by these conveyances, handcuffs, waist chains, and leg irons will be used on each prisoner.

Chapter 8.4–3.a–c. Plaintiff contends that the Marshals Service restraint policy is unreasonable because it requires that every person taken into custody by the Marshals Service be placed in "body chains" without regard to the nature of the crime charged. Plaintiff argues that "putting chains on a peaceful arrestee is the maximum possible intrusion on his liberty short of physical violence."

In *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the Supreme Court held that "all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and 'its reasonableness' standard, rather than under a 'substantive due process' approach." *Id.* at 394, 109 S.Ct. at 1870. In determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment, the court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396, 109 S.Ct. at 1871.

Mr. Safir, Deputy Director of Operations for the Marshals Service, states in his declaration that the Marshals Service's restraint policy is designed to preclude escape attempts and prevent injuries to deputies, private citizens, and the arrestee. As noted by Mr. Safir, "there is no certain correlation between the offense an individual is charged with and his or her predilection for escape or violence." Plaintiff King argues that nothing is certain. He argues that there is always risk associated with freedom. He would have this court place that risk on the marshals who are called upon to arrest and transport prisoners. Plaintiff argues that the interest put forth by the government are not compelling enough to justify the use of "body chains" on every person who comes into contact with the Marshals Service. The court disagrees.

In the day and age in which we live, neither the Marshals Service nor any other law enforcement agency should be made to risk the safety of its employees, the safety of the community or the safety of the arrestee, by being required to make subjective judgments as to an arrestee's potential for violence based upon the nature of the crime charged.

Even plaintiff's expert, Captain Ronald E. Angel of the Georgia State Patrol, testified that the policy of the Georgia State Patrol is that "any person who is arrested by a member of the department and is transported, placed in a patrol car to be transported, that person should be restrained for the safety of the officer and for the safety of the individual that has been arrested." Captain Angel further testified that the specific language "should" was intentionally placed in the policy as opposed to "shall" to take away the mandatory requirement that every person transported be restrained. However, in response to questioning by counsel for the plaintiff, Captain Angel testified that in the patrol's training program "the thrust of the training is that they [patrolmen] should restrain."

Although the Marshals Service policy requires that restraints be used at all times,

the marshals do have some latitude in determining the amount of restraint to be used. However, if less than the minimum restraint is used, the burden is upon the individual marshal to justify it. Thus, contrary to plaintiff's argument, every incidence of arrest by the Marshals Service will not necessarily result in the use of handcuffs, waist chains and leg irons. The marshal, after evaluating the circumstances, could make the decision to use less than the minimum required restraint. The fact that a particular marshal refuses to exercise that discretion in a given circumstance does not make the policy unreasonable.

Plaintiff further argues that in this particular case, he was not charged with having committed an offense or suspected of having committed an offense. As is frequently noted in the law, "bad facts, make bad law." The court cannot base it decision on the reasonableness of the Marshals Service restraint policy on this situation, which admittedly never should have happened and is unlikely to repeat itself. Viewed objectively, the Marshals Service restraint policy reasonably balances the *government's* legitimate interest in protecting the safety of the marshals, innocent bystanders and the arrestee, as well as the *government's* interest in preventing the escape of an arrestee against the arrestee's liberty interest. In the court's considered judgment, the Marshals Service restraint policy is therefore not unconstitutional.

Having found that the Marshals Service restraint policy is reasonable and therefore constitutional, the court further finds that summary judgment should be granted in favor of the Attorney General, Richard Thornburg and Stanley Morris, Director of the United States Marshals Service. In order for plaintiff to maintain an action against defendants Thornburg and Morris, plaintiff must show a causal connection between the defendants and the alleged constitutional violation. *Wanger v. Bonner*, 621 F.2d 675, 679 (5th Cir.1980). The causal connection can be through personal involvement in either the arrest itself or the promulgation of a policy that led to the injury. *Id.* Inasmuch as the court has determined that the restraint policy at issue is reasonable, and plaintiff does not contend that any other policy promulgated by defendants Morris or Thornburg resulted in his arrest, the plaintiff must be able to show that defendant Morris and defendant Thornburg had some personal involvement in the arrest of plaintiff.

There is no evidence in the record that either of the two defendants participated directly or indirectly in the arrest of plaintiff King. Consequently, the motion for summary judgment as to defendants Thornburg and Morris is GRANTED.

## CHIEF DEPUTY BROWN

Plaintiff King predicates his claim against defendant Brown upon the illegality of his seizure. Plaintiff King contends that on March 31, 1988, defendant Brown instructed deputy United States marshals under his command to arrest plaintiff within the Brunswick Division of the Southern District of Georgia, without a warrant, for an offense not committed in their presence and not a felony. Therefore, defendant Brown acted either in accordance with the policies of defendant Morris or in excess of his statutory and constitutional authority.

Plaintiff further contends that because Congress has restricted the power of magistrates in cases of contempt to certifying facts to a district court judge and ordering the alleged contemnor to appear before that judge at a later date, the magistrate judge was without jurisdiction to order his arrest and therefore it was not a lawful order of the United States as contemplated in section 566(c). Consequently, defendant Brown is not entitled to absolute or qualified immunity.

Conversely, defendant Brown contends that plaintiff was not arrested pursuant to any policy promulgated by the Marshals Service, but pursuant to the verbal order of the magistrate judge. Defendant Brown argues that he was required to carry out the magistrate judge's order in accordance with 28 U.S.C. § 566(c). Section 566(c) requires the U.S. Marshals Service to follow the lawful orders issued under the authori-

ty of the United States. Defendant Brown argues that in instructing Deputies Duncan and Heifferon to proceed to Brunswick, Georgia and take plaintiff King into custody, he was merely following the law. Therefore, defendant Brown argues he is entitled to absolute immunity. Defendant Brown further contends that even if he is not entitled to absolute immunity, he would be entitled to qualified immunity.

## ABSOLUTE IMMUNITY OF CHIEF DEPUTY BROWN

■ In *Valdez v. Denver*, 878 F.2d 1285 (10th Cir.1989), the Tenth Circuit Court of Appeals held that officials charged with the duty of executing a facially valid court order enjoy absolute quasi-judicial immunity from liability for damages in a suit challenging conduct prescribed by that order. *Id.* at 1286. A "facially valid" order is not necessarily a "lawful" order. *Turney v. O'Toole*, 898 F.2d 1470, 1473 (10th Cir. 1990); *see, United Steelworkers of America, AFL–CIO v. Bishop*, 598 F.2d 408 (5th Cir.1979). However, "there are limits to how unlawful an order can be and still immunize the officer executing it." *Turney*, at 1474. "Because absolute quasi-judicial immunity derives from judicial immunity, the order must be one for which the issuing judge is immune from liability." *Id.*

Thus, even though the magistrate judge is not a party to this action, it is necessary to examine his actions in order to determine if he would have been entitled to absolute judicial immunity. If the magistrate judge would have been protected by absolute immunity, defendant Brown would be entitled to absolute quasi-judicial immunity.

■ In *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), the Supreme Court established a two-pronged test for determining when a judge is entitled to immunity for his actions. The first prong addresses whether the judge dealt with the plaintiff in his judicial capacity. If he did not, then judicial immunity does not apply. If so, we then ask whether the judge acted in the "clear absence of all

jurisdiction." 435 U.S. at 357, 98 S.Ct. at 1105, 55 L.Ed.2d at 339. "When a judge knows that he lacks jurisdiction, or acts in the face of clearly valid statutes or case law expressly depriving him of jurisdiction, judicial immunity is lost." *Rankin v. Howard*, 633 F.2d 844, 849 (9th Cir.1980). Therefore, a deputy marshal is not absolutely immune from damages arising from the execution of an order issued by a judge acting "in the clear absence of all jurisdiction." *Id.*

■ In *Harris v. Deveaux*, 780 F.2d 911 (11th Cir.1986), the Eleventh Circuit Court of Appeals focused on the following four factors in determining whether a judge's conduct constituted a judicial act:

> (1) the precise act complaint of ... is a normal judicial function; (2) the events involved occurred in the judges chambers; (3) the controversy centered around a case then pending before the judge; and (4) the confrontation arose directly and immediately out of a visit to the judge in his official capacity.

*Id.* at 914, *citing, Harper v. Merckle*, 638 F.2d 848 (5th Cir. Unit B), *cert. denied*, 454 U.S. 816, 102 S.Ct. 93, 70 L.Ed.2d 85 (1981).

Applying those factors to this case, this court finds that the precise act complained of, the oral order directing the arrest of a lawyer who failed to arrange for a partner to appear in his stead at a scheduled hearing, is not a normal judicial function for a district court judge, and certainly not for a magistrate judge possessed of no authority to punish for contempt of court. Nevertheless, the court is mindful of the magistrate judge's authority to sign arrest warrants supported by probable cause to believe that a crime has been committed by the person named therein.

As to the second factor, while the oral order of arrest was given in the magistrate judge's chambers in Savannah, the arrest was made not in the magistrate judge's chambers or his court room, but in Brunswick, Georgia where plaintiff was representing a defendant in a state criminal trial. Thus, the events involved did not take

place entirely in the magistrate judge's chambers.

The controversy did arise as a result of a case pending before the magistrate judge, thus the third factor is met; however, as to the fourth factor the court finds that the controversy did not arise directly and immediately out of a visit to the judge in his official capacity. In fact the controversy came about because plaintiff failed to arrange for his partner to appear in his stead before the magistrate judge. Thus, not all of the factors point toward a finding that the magistrate judge's actions were of a judicial nature. Nevertheless, as the Eleventh Circuit Court of Appeals noted in *Harris*, "there are situations in which immunity must be afforded even though one or more of the ... factors fails to obtain." *Id.* at 915, *quoting Adams v. McIlhany*, 764 F.2d 294, 297 (5th Cir.1985). This is such a situation.

There is no factual evidence to indicate that the magistrate judge's actions were taken as a result of events in his private life or events in which he might have had a personal stake. Having considered the totality of the circumstances, the court therefore finds that the magistrate judge was acting in his judicial capacity. The first prong of the *Stump* test allows a finding of judicial immunity provided the second prong is also satisfied.

■■■ The second prong of the *Stump* test requires the court to determine whether the magistrate judge acted in the "clear absence of all jurisdiction." As an initial matter the court notes that the instant case does not involve a judge of general jurisdiction, but a United States magistrate judge. A magistrate judge is a judicial officer with limited jurisdiction particularly with regard to contempt. The jurisdiction of a magistrate judge with regard to contempt is set out in 28 U.S.C. § 636(e).

Section 636(e) provides in relevant part that upon the commission of an act of contempt "the magistrate shall forthwith certify the facts to a judge of the district court and may serve or cause to be served upon any person whose behavior is brought into question under this section an order requiring such person to appear before a judge of that court upon a day certain to show cause why he should not be adjudged in contempt by reason of the facts so certified." Defendant Brown contends that pursuant to 28 U.S.C. § 636(a)(1), the Local Rules of the Southern District of Georgia specifically provide Magistrate Judge's with the power to, among other things:

> Issue subpoenas, writs of habeas corpus *ad testificandum* or habeas corpus *ad prosequendum*, or other orders necessary to obtain the presence of parties or witnesses or evidence needed for court proceedings.

Local Rule 21.5(f). Thus, defendant Brown argues that in ordering the arrest of plaintiff King, the magistrate judge did nothing more than exercise his powers under local rule 21.5(f) to obtain the presence of a person needed for a court proceeding.

Defendant Brown contends that the section 636(e) does not preclude a magistrate judge from ordering an arrest in order to compel the attendance of an attorney at a previously scheduled hearing. Defendant Brown's contention is without merit. The magistrate judge could not be given authority by local rule to act beyond the limitation prescribed by Congress in section 636(e). In the court's considered judgment, the failure of plaintiff to get his partner to appear in his stead for a scheduled hearing constituted at best a possible contempt of court. The magistrate judge's only authorized response to plaintiff's failure to appear for the scheduled hearing was to certify the facts surrounding the incident to the district court judge and issue a show cause order to plaintiff to appear at a hearing scheduled before a district court judge at a later date.

Nevertheless, since a magistrate judge does have some authority to deal with a possible contempt of court, the magistrate judge acted in excess of his jurisdiction but not in the "clear absence of all jurisdiction" in ordering plaintiff's arrest. That being the case, the magistrate judge would be entitled to judicial immunity on account of which defendant Brown is entitled to quasi-

judicial immunity for carrying out the magistrate judge's arrest order.

"It is simply unfair to spare the judges who give orders while punishing the officers who obey them. Denying these officials absolute immunity for their acts would make them a 'lightning rod for harassing litigation aimed at judicial orders.'" *Valdez*, at 1289 (*quoting T & W Inv. Co., Inc. v. Kurtz*, 588 F.2d 801, 802 (10th Cir.1978). "To force officials performing ministerial acts intimately related to the judicial process to answer in court every time a litigant believes the judge acted improperly is unacceptable. Officials must not be called upon to answer for the legality of decisions which they are powerless to control." *Id.* Moreover it would be unrealistic to expect the Marshals Service to know more about the law and limitations on the authority of a magistrate judge than the magistrate judge.

## QUALIFIED IMMUNITY

■ Defendant Brown contends that even if he is not entitled to absolute immunity he is entitled to qualified immunity because his actions would have been taken within his "discretionary authority" as chief deputy U.S. Marshal. In *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. at 818, 102 S.Ct. at 2738, 73 L.Ed.2d at 410.

■ In order to overcome a qualified immunity defense, plaintiff bears the burden of showing that "the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions or, ... the law clearly proscribed the actions the ... defendant took." *Barts v. Joyner*, 865 F.2d 1187, 1190 (11th Cir. 1989), *quoting, Mitchell v. Forsyth*, 472 U.S. 511, 528, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411, 426 (1985). A plaintiff cannot discharge his burden by making general, conclusory allegations of some constitutional violation or by stating broad legal truisms. *Id.* at 1190. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.*, *quoting, Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523, 531 (1987). It is not necessary that the specific conduct in question has been explicitly held to be unlawful prior to the time the official acted. *Stewart v. Baldwin County Bd. of Educ.*, 908 F.2d 1499, 1504. However, the unlawfulness must be apparent in light of pre-existing law. *Id.* Thus, "an official will be immune from liability if the applicable law was unclear or a reasonable officer could have believed that his actions were lawful in light of the clearly established law and the information he possessed by the officer." *Id.*

Thus, the question in this case is not whether probable cause is necessary for a lawful arrest—it is. Nor is the question whether an arrest made in the absence of probable cause is a violation of the Fourth Amendment—it is. The question is whether in March, 1988, it was clearly established in this circuit that it was unconstitutional for the Marshals Service, pursuant to the verbal order of a magistrate judge, to arrest an attorney for failing to appear at a scheduled hearing.

Plaintiff has not furnished and the court has not found any case holding that a deputy United States marshal is not authorized to effect an arrest upon the verbal instructions of a United States magistrate judge, and more particularly that such an arrest of a lawyer for failure to appear would constitute a Fourth Amendment violation. Therefore, the court finds that in March, 1988, it was not clearly established that it was an unconstitutional seizure for Chief Deputy Brown to instruct deputies of the United States Marshals Service to carry out the verbal order of the magistrate judge to arrest plaintiff King for failing to appear or arrange for substitute counsel at a scheduled hearing. Consequently, the court finds that defendant Brown would also be entitled to qualified immunity.

For the reasons given above, the court finds that the United States Marshals Service restraint policy is not unconstitutional. Plaintiff's motion for partial summary judgment is DENIED, and defendants' motions for summary judgment are GRANTED.

SO ORDERED.