8 F.3d 917
 Manuel SOARES, Plaintiff-Appellee,
v.
STATE OF CONNECTICUT, Department of Environmental
Protection, Leslie Carothers, Former Commissioner
of D.E.P., Joseph Healy, Captain, Eric
Smith, Defendants,
Henry Konow, Sergeant, Clayton Firmin, Officer, John Luty,
Officer, Defendants-Appellants.
 No. 333, Docket 93-7377.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 22, 1993.
Decided Nov. 2, 1993.
 
 Michael Bradley, Stonington, CT, for plaintiff-appellee.
 Robert B. Teitelman, Asst. Atty. Gen., Hartford, CT (Richard Blumenthal, Atty. Gen.), for defendants-appellants.
 Before: VAN GRAAFEILAND, WALKER, and JACOBS, Circuit Judges.
 WALKER, Circuit Judge:
 
 
 1
 This appeal is from an order of the District Court of the District of Connecticut (Alan H. Nevas, Judge) that denied three state employee defendants summary judgment on their qualified immunity defense to plaintiff's claim that when they arrested him on a warrant and placed him in handcuffs they violated his Fourth Amendment rights. The district court held that issues of fact existed as to the qualified immunity defense because one defendant failed to include in the probable cause affidavit supporting the arrest warrant the fact that the regulation underlying the charge against plaintiff had a history of non-enforcement and because the other two defendants may have acted unreasonably in handcuffing plaintiff upon his arrest. We reverse.
 
 BACKGROUND
 
 2
 In early 1990, defendant Konow, an enforcement officer with the Connecticut Department of Environmental Protection ("DEP"), while responding to a discovery request related to a different charge against plaintiff Soares, a commercial fisherman, came across certain DEP records indicating that Soares had violated a Connecticut regulation by submitting false reports that he did not fish during 1989. See Conn. Agencies Regs. § 26-157b-1(i).
 
 
 3
 After further investigation, on March 30, 1990, Konow submitted to an Assistant State Attorney ("ASA") a sworn affidavit as part of an application for a warrant to arrest plaintiff for violating the reporting regulation. Konow's affidavit set forth facts indicating that plaintiff had submitted false monthly reports indicating that he had not fished in 1989, but contained no information pertaining to the non-enforcement history of the regulation. The ASA signed and submitted the application to a judge of the Connecticut Superior Court who issued the warrant on April 20, 1990.
 
 
 4
 On April 27, 1990, armed with the arrest warrant, defendants DEP enforcement officers Firmin and Luty arrested Soares at the town dock in Stonington, Connecticut and placed him in handcuffs before placing him in the police car for transport to the Stonington Police Station. Shortly after plaintiff arrived at the station, the handcuffs were removed leaving plaintiff's right wrist slightly bruised and his left wrist with a temporary indentation.
 
 
 5
 The ASA filed charges against plaintiff but thereafter the case apparently lay dormant until April 17, 1991 when the ASA filed and the Connecticut Superior Court entered an order of nolle prosequi dismissing all charges against plaintiff.
 
 
 6
 On May 29, 1991, plaintiff instituted this suit under 42 U.S.C. §§ 1983 and 1988 against the DEP and various DEP officials in their official and individual capacities, including Konow, Firmin and Luty, claiming false arrest, use of excessive force, selective prosecution, cruel and unusual punishment, violation of free speech rights, and failure to train and supervise law enforcement officers.
 
 
 7
 In July 1991, the district court dismissed the complaint as to the DEP without opposition. And in February 1992, the district court dismissed further claims leaving only claims against five DEP defendants, including Konow, Firmin and Luty, in their individual capacity for selective prosecution, false arrest and excessive force.
 
 
 8
 On July 30, 1992, all defendants moved for summary judgment asserting inter alia qualified immunity defenses on the remaining claims. In a decision filed on April 15, 1993, the district court granted summary judgment in favor of all defendants except as to Konow on the false arrest claim, and except as to Firmin and Luty on the excessive force claim. Plaintiff's motion for reconsideration was denied.
 
 
 9
 Defendants Konow, Firmin, and Luty now appeal from the district court's April 15, denial of summary judgment to them based on their defense of qualified immunity.
 
 DISCUSSION
 
 10
 Although the district court's April 15, 1993 decision is not a final order, "[i]t is well settled under the collateral order doctrine that the denial of summary judgment based on the issue of qualified immunity, though technically interlocutory, is reviewable by an appellate court." Cartier v. Lussier, 955 F.2d 841, 844 (2d Cir.1992). Our jurisdiction in such matters is limited to circumstances where the qualified immunity defense may be established as a matter of law or where the district court has committed fundamental error in applying the law. See Cartier, 955 F.2d at 844; see also Mitchell v. Forsyth, 472 U.S. 511, 526-30, 105 S.Ct. 2806, 2815-18, 86 L.Ed.2d 411 (1985); Washington Square Post # 1212 v. Maduro, 907 F.2d 1288, 1292 n. 1 (2d Cir.1990).
 
 
 11
 Defendants contend that they are entitled to receive qualified immunity protection as a matter of law. To establish this defense at the summary judgment stage, the officers must show upon facts that are undisputed "either that [their] conduct did not violate 'clearly established rights' of which a reasonable person would have known, or that it was 'objectively reasonable' to believe that [their] acts did not violate these clearly established rights." Finnegan v. Fountain, 915 F.2d 817, 823 (2d Cir.1990); see also Harlow v. Fitzgerald, 457 U.S. 800, 818-19, 102 S.Ct. 2727, 2738-39, 73 L.Ed.2d 396 (1982).
 
 I. The False Arrest Claim
 
 12
 Soares argues that the qualified immunity that might otherwise shield an officer who submits a probable cause affidavit to support an arrest warrant is not available to Konow because the affidavit omitted what plaintiff claims to be the material fact that the DEP reporting regulations were not enforced prior to his prosecution. The district court agreed with plaintiff, ruling that Konow was not entitled to qualified immunity for his actions because "a jury could conclude that Konow's failure to inform the judge that the reporting requirements were never or rarely enforced was a material or reckless omission."
 
 
 13
 It is settled that a person has a clearly established right not to be arrested or prosecuted without probable cause. Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 3032, 120 L.Ed.2d 902 (1992). A plaintiff can demonstrate that this right was violated where the officer submitting the probable cause affidavit "knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit" or omitted material information, and that such false or omitted information was "necessary to the finding of probable cause." Id. at 870-71 (citing Franks v. Delaware, 438 U.S. 154, 155-56, 98 S.Ct. 2674, 2676-77, 57 L.Ed.2d 667 (1978)) (internal quotations omitted).
 
 
 14
 In reviewing such cases on qualified immunity motions, a court should put aside allegedly false material, supply any omitted information, and then determine whether the contents of the "corrected affidavit" would have supported a finding of probable cause. See Cartier, 955 F.2d at 845; Magnotti v. Kuntz, 918 F.2d 364, 368 (2d Cir.1990). If probable cause remains, no constitutional violation of the plaintiff's Fourth Amendment rights has occurred. Cartier, 955 F.2d at 845; see also Magnotti, 918 F.2d at 368 (summary relief must be granted "if the affidavit accompanying the warrant is sufficient, after correcting for material misstatements or omissions, to support a reasonable officer's belief that probable cause existed"). However, if the corrected affidavit does not support an objective finding of probable cause, then the court should conclude that material factual disputes prevent summary judgment for defendant on the qualified immunity defense. Cartier, 955 F.2d at 845-46.
 
 
 15
 Here, the Connecticut Superior Court was asked to determine whether there was probable cause to arrest Soares for violation of the reporting regulation and, based on Konow's affidavit that omitted any reference to enforcement history, found that probable cause existed. If Konow's affidavit were "corrected" to include the history of non-enforcement of the reporting regulation, the probable cause calculus would be no different because such information is simply irrelevant to the question whether there was probable cause to believe that Soares had violated the regulation. Any decision not to prosecute an offense based on official acquiescence to widespread noncompliance is solely within the discretion of the executive branch, not the courts; consequently, for the state court to factor such a consideration into whether probable cause existed would have been improper. Konow's affidavit plainly contained sufficient information to support a finding of probable cause. It established that Soares had fished in 1989 even though he reported that he had not fished in that year. The district court thus erred in ruling that omission of the regulation's enforcement history led to a violation of plaintiff's Fourth Amendment rights. Accordingly, Konow is entitled to summary judgment on the basis of qualified immunity.
 
 II. The Excessive Force Claim
 
 16
 Plaintiff argues that in light of the fact that he was charged with a minor and non-violent crime, physical custody and handcuffing were unreasonable applications of force in violation of his Fourth Amendment rights. The district court determined that Firmin and Luty were not entitled to qualified immunity because "it is not clear that reasonable officers in Luty's and Firmin's position would have believed that the actions taken were not violative of established standards of arrest conduct." The court noted that the officers failed to demonstrate compliance with a DEP directive governing the circumstances under which officers may use handcuffs.
 
 
 17
 Defendants argue that this decision must be reversed because handcuffing an arrestee is per se reasonable under the standard articulated in Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). We disagree. Although handcuffing will be the reasonable course in many, if not most arrest situations, we do not accept the principle that handcuffing is per se reasonable or that Graham v. Connor requires such a conclusion.
 
 
 18
 In Graham, the Supreme Court held that "all claims that law enforcement officers have used excessive force--deadly or not--in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." Id. at 395, 109 S.Ct. at 1871. In determining whether the force used to effect a particular seizure is reasonable, a court must evaluate the particular circumstances of each case. As the Graham Court stated:
 
 
 19
 Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," Bell v. Wolfish, 441 U.S. 520, 559 [99 S.Ct. 1861, 1884, 60 L.Ed.2d 447] (1979), ... its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. See Tennessee v. Garner, 471 U.S. , at 8-9 [105 S.Ct. 1694 at 1700, 85 L.Ed.2d 1 (1985) ] (the question is "whether the totality of the circumstances justifie[s] a particular sort of ... seizure").
 
 
 20
 Id., 490 U.S. at 396, 109 S.Ct. at 1872. Given Graham 's teaching that each case be decided on its own facts, we reject defendants' invitation to adopt a per se rule that the use of handcuffs in effecting an arrest is always reasonable.
 
 
 21
 Even though defendants Firmin and Luty are not able on this summary judgment motion to establish that their conduct was necessarily "objectively reasonable," they can prevail on their qualified immunity defense if they can show that the rights plaintiff claims to have been violated were not "clearly established." See Finnegan, 915 F.2d at 823. While the right to be free from excessive force is clearly established, the inquiry cannot stop at such a generalized level of fact. See id. ("[T]o say that the use of constitutionally excessive force violates a clearly established right ... begs the open question whether the particular degree of force under the particular circumstances was excessive."); see also Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.... [I]n the light of pre-existing law the unlawfulness must be apparent.").
 
 
 22
 In the present case, the right in question is the right not to be handcuffed in the situation presented to the arresting officers. To determine whether this right was clearly established at the time defendants acted, we must consider: (1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful. Calhoun v. New York State Div. of Parole Officers, 999 F.2d 647, 654 (2d Cir.1993).
 
 
 23
 Neither the Supreme Court nor the Second Circuit has established that a person has the right not to be handcuffed in the course of a particular arrest, even if he does not resist or attempt to flee. Plaintiff has not cited, nor are we aware of any case from other circuits which acknowledged the existence of such a right prior to the time of plaintiff's arrest. Since plaintiff's arrest, the Sixth Circuit has ruled that an excessive force claim could be premised on an officer's handcuffing of an allegedly injured woman. See Walton v. City of Southfield, 995 F.2d 1331, 1342 (6th Cir.1993). But even if Walton were controlling and had preceded the arrest in this case, it would not make it clear to an arresting officer that Soares, who was not injured and was thus able to resist or flee, had a right not to be handcuffed. We note also that two years before Walton, but after the arrest in this case, a district court in the Southern District of Georgia reached a contradictory result in King v. Thornburg, 762 F.Supp. 336 (S.D.Ga.1991). The King court ruled that the United States Marshals' policy of always using handcuffs during the transportation of persons taken into custody was reasonable under the Fourth Amendment standard articulated in Graham. 762 F.Supp. at 339-40. These two cases indicate that there is still no clear authority on whether and under what circumstances, if any, a person has a constitutional right not to be handcuffed in the course of an arrest.
 
 
 24
 Given the absence of any preexisting caselaw recognizing plaintiff's alleged right not to be handcuffed and in light of the presently existing conflict of views, it is plain that Firmin and Luty did not violate plaintiff's "clearly established" rights during his arrest. Consequently, the officers enjoy qualified immunity and are entitled to have the suit against them dismissed.
 
 
 25
 We further note that the district court placed unwarranted reliance on whether the officers complied with a written DEP handcuffing policy. To be sure the written policy might bear upon whether the officers' actions were objectively reasonable, but it has no bearing on whether the officers violated clearly established constitutional or statutory rights unless it somehow created a protected interest in the plaintiff in not being handcuffed. In the prison context, we have held that for a state regulation to create a protected liberty interest, it must contain "language of an unmistakably mandatory character, requiring that certain procedures 'shall,' 'will,' or 'must' be employed." Purnell v. Lord, 952 F.2d 679, 684 (2d Cir.1992) (citation omitted). Here, the DEP Directive Form states only that "[h]andcuffs may be used.... [w]hen an arrested person is being transported to a place for booking, if, in the opinion of the officer, it was necessary to prevent escape or injury." Far from using explicitly mandatory language, the directive gives the arresting officer discretion to decide when handcuffs should be used. Thus, in no sense can the directive be said to clearly establish a protected liberty interest in not being handcuffed which the officers reasonably could have known they were violating. We note in passing that plaintiff's complaint is devoid of any claim based on a violation of a departmental policy.
 
 CONCLUSION
 
 26
 For the foregoing reasons, we reverse the district court's April 15, 1993 order denying summary judgment to Konow on the false arrest claim and to Firmin and Luty on the excessive force claim and order those claims dismissed. We remand for such further proceedings in the district court as are not inconsistent with the foregoing.