Albert CSOKA, Plaintiff,

v.

COUNTY OF SUFFOLK, Suffolk County Police Officer Thomas Murphy, Suffolk County Police Officer John Friberg, Suffolk County Police Detective Jeffrey Chagnon, and Linda Csoka, and Suffolk County Police Officers John Does 1–10, Defendants.

No. 97–CV–3982.

United States District Court, E.D. New York.

Feb. 7, 2000.

Michael J. Regan, Port Jefferson, NY, for Plaintiff.

Robert J. Cimino, Suffolk County Attorney by Arlene S. Zwilling, Asst. County Atty., Hauppauge, NY, for Defendants Suffolk County, Thomas Murphy, John Friberg, and Jeffrey Chagnon.

Tananbaum & Sibener by Elliott Tananbaum, Commack, NY, for Defendant Linda Csoka.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This case concerns allegations by the Plaintiff Albert Csoka ("Csoka") that the Defendants violated his civil rights under 42 U.S.C. § 1983 by conspiring to intimidate and harass him so as to deny him access to the courts. Presently before the Court are motions by all of the Suffolk County Defendants to dismiss the complaint pursuant to Fed.R.Civ.P. 12(c).

### BACKGROUND

In February 1993, Csoka, a retired Suffolk County Police Officer, filed for divorce from his wife, Linda Csoka ("Linda"). Linda is the sister of Defendant Murphy, a present Suffolk County Police Officer. Csoka claims that, beginning on June 4, 1993, members of the Suffolk County Police Department began a campaign of intimidation and harassment against him in an effort to interfere with his pursuit of his hotly-contested divorce action.

The details in the amended complaint are somewhat sketchy, but Csoka appears to indicate that Linda obtained an Order of Protection against him on April 30, 1993. On June 4, 1993, Csoka was apparently arrested for Criminal Contempt in the Second Degree, presumably for violating the Order of Protection. The amended complaint gives no information about this arrest. Csoka was arrested a second and third time for Criminal Contempt, again under circumstances that are not stated, on November 3, 1993 and December 14, 1993.

On December 16, 1993, Csoka filed a complaint with the Suffolk County Police against Linda, alleging that she forged his signature on a personal injury settlement check in the sum of $18,000. On December 22, 1993, Csoka alleges that the Forgery complaint he filed was "rejected without explanation" by the police.

On February 20, 1994, Csoka was again arrested for Criminal Contempt, this time

by Defendant Police Officer John Friberg. On May 12, 1994, Csoka filed a Notice of Claim with Suffolk County, alleging that the February 20 arrest was without probable cause. Thereafter, Csoka was arrested for Criminal Contempt again on October 12 and October 20, 1994. On November 23, 1994, Csoka was convicted of Criminal Contempt relating to the February 20, 1994 arrest. While awaiting sentencing, Csoka was again arrested for Criminal Contempt on December 5, 1994. On March 2, 1995, Csoka was sentenced to 3 years probation and a $90 surcharge on the November 23, 1994 conviction.

On October 7, 1995, Csoka contends that Linda knowingly filed a false statement with the Suffolk County Police, alleging that Csoka approached her twice at a football game and made upsetting remarks to her. Defendant Police Officer Jeffrey Chagnon contacted Csoka to inform him of Linda's complaint, and although Csoka provided the police with names of two witnesses who allegedly would deny Linda's allegations (one of whom the police had allegedly already spoken to about the incident), Chagnon sought and obtained a warrant for Csoka's arrest. On October 13, 1995, Csoka was arrested pursuant to Linda's October 7 complaint. One of Csoka's witnesses, Carmen Rossi, provided the police with a sworn statement explaining that, at the football game, Csoka, standing 30 feet away from Linda and Rossi, asked Rossi to ask Linda "how much does your boyfriend pay you to live there?" A second witness, Marilyn Miner, denied seeing Csoka approach or speak to Linda. The case resulting from the October 13, 1995 arrest went to trial on August 12, 1996, at which time the County chose to dismiss the case.

In the interim, on December 15, 1995, an judgment of divorce was granted to Csoka. On October 16, 1996, Csoka filed a second Notice of Claim against the County, alleging a pattern of harassment and false arrests dating back to October 1993. Finally, on February 25, 1997, the Appellate Division, Second Department reversed Csoka's November 23, 1994 conviction on the law and dismissed the accusatory instrument.

Csoka then filed the instant action on July 11, 1997. Csoka amended his complaint on February 16, 1999 to allege a total of nine causes of action. The first cause of action charges Defendants Murphy, Friberg, Chagnon, and Linda with conspiring to deprive Csoka of his right to access to the courts by harassing and falsely arresting him in order to secure a more favorable divorce resolution for Linda. The second cause of action alleges that each individual Defendant (including Linda) deprived Csoka of access to the courts in violation of Section 1983. The third cause of action restates the same allegations, claiming that the arrests were retaliation for Csoka's having filed the Notice of Claim on February 20, 1994. The fourth cause of action charges Defendant Chagnon with false arrest under Section 1983 for the October 10, 1995 arrest. The fifth cause of action charges Suffolk County under Section 1983 for an alleged custom and practice of failing to adequately train and supervise the police. The sixth cause of action charges Defendant Chagnon with intentional infliction of emotional distress relating to the October 10, 1995 arrest. The seventh cause of action is a verbatim reiteration of the sixth cause of action except that it claims negligent infliction of emotional distress. The eighth and final cause of action alleges intentional infliction of emotional distress against Linda Csoka.

Defendants Suffolk County, Murphy, Friberg, and Chagnon now move to dismiss all the causes of action against them. They contend that Csoka fails to state a claim for interference with access to the courts under Section 1983 because he fails to allege any such actual injury resulting from the arrests. They also challenge any efforts by Csoka to recover for the first four arrests on the ground of untimeliness. Defendant Chagnon contends that the

false arrest claim against him should be dismissed on the ground that the arrest warrant was properly issued by a judge and that Chagnon had no obligation to present the alleged exculpatory evidence in making the warrant application. Chagnon also moves to dismiss Csoka's claims of intentional and negligent infliction of emotional distress for failure to state a claim and failure to comply with the notice of claim requirements of N.Y.Gen.Mun.L. § 50–i. Finally, Defendant Suffolk County argues that, since no claims against the individual officers survive, no vicarious claim against the County may stand.

### DISCUSSION

As in a motion under Rule 12(b), a court ruling on a motion under Rule 12(c) is to look only to the allegations of the complaint and any documents attached to or incorporated by reference in the complaint, *Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 662 (2d Cir.1996); to assume all well-pleaded factual allegations to be true; and to view all reasonable inferences that can be drawn from such allegations and documents in the light most favorable to the plaintiff. *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir.1999); *Dangler v. New York City Off Track Betting Corp.*, 193 F.3d 130 (2d Cir.1999). The issue to be considered by the Court is not whether a plaintiff will ultimately prevail, but merely whether the claimant is entitled to offer evidence to support the claims. *Id., citing Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995).

### A. The Plaintiff's claims of interference with access to the courts

It is a well-established principle that persons enjoy a right of access to the courts. *Monsky v. Moraghan*, 127 F.3d 243, 246 (2d Cir.1997). In order to establish such a claim, a plaintiff must show that the defendant was responsible for actions that actually injured the plaintiff's efforts to pursue a claim. *Id.* at 247; *Brown v.*

*Stone*, 66 F.Supp.2d 412, 434–35 (E.D.N.Y. 1999). This "actual injury" requirement, which *Monsky* likened to the requirement of standing, must entail "more than just any type of frustrated legal claim," such as delays in communicating with the court or the ability to work on a legal action. *Kirton v. Hassel*, 1998 WL 146701 (E.D.N.Y. 1998).

Here, the only alleged "actual injury" the Plaintiff has asserted in his amended complaint is that the actions of the Defendants caused him to "surrender[ ] certain assets to Linda Csoka in the divorce proceeding that would not have been surrendered in the absence of the aforementioned intimidation and harassment." At first blush, this allegation would appear to fall within the category of injuries that the court in *Monsky* found insufficient to state a claim. There, the plaintiff alleged that the defendant's harassment "burdened her ability to freely remain in the Clerk's office and consult materials relevant to her pending civil litigation." 127 F.3d at 247. The court went on the find that "these effects ... are not the type of actual injury that gives rise to a constitutional claim of denial of access to the courts." *Id.* Here, Csoka's claim that harassment by the police interfered with his ability to pursue his divorce action appears to be analogous to the situation in *Monsky*, thus warranting dismissal for the same reasons. However, the court's decision in *Monsky* turned on the absence of any actual prejudice to the plaintiff's case from the harassment. *See* 127 F.3d at 247 ("Nor does she claim that the defendant's behavior caused any prejudice to her pending state-court litigation.")

Because Csoka has alleged that the police harassment *did* cause prejudice to his rights in the divorce proceeding, the general rule of *Monsky* does not necessarily apply here. *See e.g. Brown v. Stone*, 66 F.Supp.2d 412, 435 (E.D.N.Y.1999) (plaintiff's allegation that he considered withdrawing lawsuit sufficient to meet "actual injury" test); *Brown v. Jacobson*, 1999

WL 1125122 (S.D.N.Y.1999) (cause of action might exist where threats cause person to discontinue pursuit of litigation). This Court need not determine precisely the type of injury necessary to satisfy the requirement of *Monsky*, since the assertion that Csoka actually suffered prejudice in his divorce proceeding is certainly sufficient at this stage of the litigation. The Court has some doubts as to whether Csoka will be able to show that the action of the police had any effect on the ultimate property distribution in the divorce action without simultaneously attacking the validity of the final judgment of divorce, a judgment that this Court is prohibited from reviewing under the *Rooker–Feldman* doctrine, *see District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Moccio v. New York State Office of Court Admin.,* 95 F.3d 195, 197 (2d Cir. 1996). However, the standard governing review of motions to dismiss requires that Csoka at least be given an opportunity to put forth such proof. Therefore, the Defendants' motion to dismiss the Plaintiff's Section 1983 claims based on failure to state a claim for interference with access to the courts is denied.

■ The Defendants are correct, however, that not all of the arrests can timely be considered as part of Csoka's claim. This case was filed on July 11, 1997 and thus, any proceedings relating to the arrests prior to July 11, 1994 would be barred by the three year statute of limitations for a Section 1983 claim. *Owens v. Okure,* 488 U.S. 235, 249–51, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989); *Soto v. Brooklyn Correctional Facility,* 80 F.3d 34, 35 (2d Cir.1996). The fact that Csoka has alleged an ongoing conspiracy against him does not toll the statute of limitations as to otherwise untimely arrests that are allegedly part of that conspiracy. *Pinaud v. County of Suffolk,* 52 F.3d 1139, 1157 (2d Cir.1995).

The Defendants' valid statute of limitations defense to claims arising from the first four arrests is a sufficient basis to dismiss the first three causes of action as against Defendants Friberg and Murphy. The only allegations in the amended complaint concerning Defendant Friberg allege that he was responsible for the February 20, 1994 arrest of Csoka. Since claims arising from that arrest are barred by the statute of limitations, and no other factual allegations implicate specific acts by Defendant Friberg, dismissal of the causes of action against Friberg on timeliness grounds is appropriate.

For similar reasons, claims against Defendant Murphy must also be dismissed. While Csoka alleges that the entire conspiracy to harass him revolved around the fact that Linda is Defendant Murphy's sister, the amended complaint contains only a single factual allegation involving Murphy: namely, that Defendant Friberg somehow notified Defendant Murphy that Csoka had been arrested in February 1994. Apart from the fact that nowhere in the amended complaint does Csoka affirmatively allege facts that suggest that Murphy actively conspired to harass Csoka or otherwise organized or participated in the alleged conspiracy or made any of the arrests, the absence of any factual allegations involving Murphy within the limitations period requires dismissal of the claims against him.

Therefore, the motions by Defendants Friberg and Murphy to dismiss the first three causes of action against them are granted.

**B. The Plaintiff's claim for False Arrest**

■ Csoka's fourth cause of action alleges a Section 1983 false arrest claim against Defendant Chagnon relating to the October 13, 1995 arrest, on the ground that Chagnon presented false or misleading information to the judge issuing the warrant. A plaintiff claiming false arrest must show that the defendant intentionally confined him without his consent and without justification. *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996). A finding that the

police had probable cause is a complete defense to an action for false arrest. *Posr v. Court Officer Shield # 207*, 180 F.3d 409, 414 (2d Cir.1999); *Bernard v. U.S.*, 25 F.3d 98, 102 (2d Cir.1994). Normally, the issuance of a warrant by a judge creates a presumption of probable cause. *Golino v. City of New Haven*, 950 F.2d 864 (2d Cir.1991). This presumption can be overcome only by a substantial showing that the officer seeking the warrant "knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit or omitted material information, and that such false or omitted information was necessary to the finding of probable cause." *Soares v. Connecticut*, 8 F.3d 917, 920 (2d Cir.1993).

Here, Csoka alleges that when Chagnon presented Linda's sworn statement to a judge, he failed to simultaneously inform the judge that Carmen Rossi and Marilyn Miner had given statements that allegedly contradicted Linda's version of the events. Under *Soares*, when determining whether false or omitted information would have made any difference in a finding of probable cause, the court should "supply any omitted information, and then determine whether the contents of the 'corrected affidavit' would have supported a finding of probable cause." 8 F.3d at 920.

Even if the affidavits of Rossi and Miner were presented to the judge, this Court finds that, as a matter of law, probable cause would have existed to arrest Csoka. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir.1996) (court may determine existence of probable cause as a matter of law when facts are undisputed). Contrary to Csoka's contention, Rossi's affidavit substantially confirms the accusations in Linda's complaint. Linda told police that "about ten minutes later, [Csoka] walked up to me again. I was still standing with Carmen. [Csoka] said to Carmen ask her, meaning me, how much money her live-in boy friend is giving her." Rossi's statement, on the other hand, states that Csoka, while stand-

ing about 30 feet away, shouted towards Rossi to ask Linda "how much does your boyfriend pay you to live there?" The slight difference between the two affidavits regarding where Csoka was standing is irrelevant; even under Rossi's version, Csoka's shouting across a crowd to Linda about her boyfriend paying to live with her could reasonably be considered an act of harassment. *See* N.Y.Penal L. § 240.26(3) (Harassment in Second Degree includes "acts which alarm or seriously annoy such other person and which serve no legitimate purpose"). Miner's affidavit, which merely states that she observed Csoka "numerous times" at the game but never saw him approach or speak to Linda, neither supports nor contradicts Linda's complaint.

Thus, this Court finds that even if Chagnon had presented the Rossi and Miner statements to the judge, with reasonable certainty, a warrant for Csoka's arrest would have nevertheless issued. Thus, the Court finds that the presumption of validity of the arrest warrant cannot be overcome even if the facts alleged by Csoka were true. Because Chagnon had probable cause to arrest Csoka on October 13, 1995, Csoka's cause of action against Chagnon for false arrest must be dismissed.

### C. The claims against Suffolk County

Defendant Suffolk County moves to dismiss the fifth cause of action, which alleges under Section 1983 that Suffolk County failed to adequately train and supervise its police officers.

While Suffolk County is correct that all of the causes of actions alleged against the individually named police officers should be dismissed, such dismissals do not necessarily mandate dismissal of Csoka's claim against the County. Reading Csoka's amended complaint in his favor, he challenges not only the October 13, 1995 Chagnon arrest, but three other arrests by as-yet-unidentified Suffolk County police officers within the limitations period. If Csoka can show that these arrests were the result of a custom and practice in Suffolk

County of failing to properly train and supervise police officers, he may recover damages from Suffolk County. *See Monell v. Dept. of Social Services,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

While Suffolk County correctly notes that *City of Los Angeles v. Heller,* 475 U.S. 796, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986), requires Csoka to prove that one of the individual Defendants violated his constitutional rights before the County may be held liable, *see also Pitchell v. Callan,* 13 F.3d 545, 549 (2d Cir.1994), the Court here cannot say with certainty at this early stage of the litigation that Csoka will be unable to demonstrate that the as-yet unidentified officers on the other three arrests violated his constitutional rights in some way. Therefore, Suffolk County's motion to dismiss the Fifth cause of action is denied.

**D. The Plaintiff's claims for intentional and negligent infliction of emotional distress**

 Defendant Chagnon also moves to dismiss Csoka's claims of negligent and intentional infliction of emotional distress. Both claims rest on the allegation that Defendant Chagnon lacked probable cause for the October 13, 1995 arrest. However, since this Court finds that, as a matter of law, Chagnon *did* have probable cause to arrest Csoka, the claims for intentional and negligent infliction of emotional distress should be dismissed. A lawful arrest cannot support a claim for intentional or negligent infliction of emotional distress. *Pawlicki v. City of Ithaca,* 993 F.Supp. 140, 145 (N.D.N.Y.1998); *Willner v. Town of North Hempstead,* 977 F.Supp. 182, 195 (E.D.N.Y.1997).

### CONCLUSION

For the foregoing reasons, the motions by Defendants Friberg, Murphy, and Chagnon to dismiss the first, second, third, fourth, sixth, and seventh causes of action in the amended complaint are GRANTED.

The motion by Defendant Suffolk County to dismiss the fifth cause of action is DE-NIED. The caption of the case shall henceforth be amended to read: "ALBERT CSOKA, plaintiff vs. COUNTY OF SUFFOLK, LINDA CSOKA, and Suffolk County Police Officers JOHN DOE 1–10, defendants." The remaining Defendants are directed to proceed to discovery.

**SO ORDERED.**