David WILLNER and Kerren
Willner, Plaintiffs,

v.

TOWN OF NORTH HEMPSTEAD; Donald Alberto, Individually and as Building Commissioner of the Town of North Hempstead; May Newburger, Individually and as Town Supervisor of the Town of North Hempstead; Robert Schroeter, Individually and as Building Inspector of the Town of North Hempstead; Philip Zarny, Individually and as Building Commissioner of the Town of North Hempstead, Defendants.

No. CV 96–2311(ADS).

United States District Court,
E.D. New York.

Sept. 11, 1997.

Frooks & Frooks, Mohegan Lake, NY (George P. Frooks, of counsel), for Plaintiffs.

Betty A. Maier, Deputy Town Attorney, Town of North Hempstead, Manhasset, NY (Howard S. Miller, of counsel), for Defendants.

SPATT, District Judge.

The plaintiffs, David Willner and Kerren Willner (collectively, the "plaintiffs" or the "Willners") commenced this lawsuit against the defendants, the Town of North Hempstead (the "Town") and Don Alberto ("Alberto"), May Newburger ("Newburger"), Robert Schroeter ("Schroeter") and Philip Zarny

("Zarny", collectively, the "defendants"), in their individual and official capacities as officials and employees of the Town, pursuant to 42 U.S.C. §§ 1983 ("Section 1983") and 1988, alleging violations of their constitutional due process and equal protection rights, and pursuant to state law. The gravamen of the complaint is that the plaintiffs were the victims of a malicious prosecution and abuse of process when the defendants commenced criminal proceedings for violations of the Town Code. One count of the criminal information was withdrawn and the other two counts were dismissed on the Willners' motion.

Presently before the Court is the defendants' motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(1) and (6), and the plaintiffs' cross-motion for summary judgment, pursuant to Fed.R.Civ.P. 56 on Counts IV and V.

## I. BACKGROUND

The following facts are taken from the amended complaint and any documents submitted by the defendants which were incorporated by reference in the amended complaint. In or about 1992, the Town, a municipal corporation, issued a building permit for the construction of a new single family dwelling to be located on a parcel of land designated as 65 Ryder Road, Manhasset, New York (the "premises"). This parcel of land was among the last undeveloped parcels in the neighborhood and was situated geographically at a low point of a hilly area of homes. The parcel required a variance, which was issued, from the Town's Zoning Board of Appeals prior to the issuance of the building permit. The plaintiffs' contractor filed the building plans, which included a drainage plan, in order to obtain the building permit.

On or about July 29, 1993, the Town issued a certificate of occupancy for the premises. On or about that same day, the plaintiffs closed title to the premises. Subsequently, the plaintiffs installed approximately two inches of topsoil when they were landscaping the grounds. Thereafter, on or about November 1, 1993, Schroeter, the building inspector for the Town, on behalf of Zarny and the Town, issued a Notice of Violation citing improper drainage, setback requirements and filling of land without a permit. Zarny was the Building Commissioner until on or about December 31, 1993. On or about December 13, 1993, Zarny wrote to the plaintiffs demanding that "all water run-off from your property must be retained on your property without flowing onto adjoining sites." The plaintiffs were allegedly compelled to meet with Schroeter and Alberto, Zarny's successor as Building Commissioner, in an attempt to resolve the violation.

On or about February 4, 1994, a three-count criminal information was filed against the plaintiff, David Willner, which was based on the same allegations as the previous Notice of Violation. Count I alleged that the plaintiffs had an improper storm water drainage plan. Count II alleged that the plaintiffs had improperly installed an air conditioning unit. Count III alleged that the plaintiffs had an improper grading of their land. Count III was withdrawn by the defendants prior to trial. After trial in the District Court of Nassau County, Third District, Great Neck Part, before Judge Ute Wolff Lally, the plaintiffs made a post-trial motion to dismiss the information. By a decision dated August 11, 1995, Judge Lally dismissed the remaining two counts for the following reasons: (1) Count I of the information was dismissed for failure to allege any facts to establish a prima facie case; and (2) Count II was dismissed because it would be mooted by compliance with the variance granted by the Town.

Upon the failure of the defendants to obtain a conviction, the plaintiffs allege that Newburger, the Supervisor of the Town, induced and compelled the Town to connect the plaintiffs' neighbor's old, non-functioning drywell to the Town's storm sewer system, at the public's expense.

The amended complaint contains eight claims. Count I alleges that the charges brought against the plaintiffs under the zoning and building laws were without probable cause and had no evidentiary support or were not warranted by existing law. Count II alleges coercion by Zarny. Count III alleges that Newburger committed unauthorized acts and omissions relating to her of-

fice, in violation of N.Y. Penal Law § 195.00(1), consisting of malicious prosecution, abuse of process, harassment of the plaintiffs and improper use of public funds. Count IV, V and VI allege malicious prosecution and abuse of process by Schroeter, Alberto and Zarny, their acts and omissions constituting violations of N.Y. Penal Law § 195.00. Count VII alleges municipal liability and Count VIII alleges intentional infliction of emotional distress. The plaintiffs seek compensatory and punitive damages, a declaratory judgment and attorneys fees, costs and disbursements.

## II. DISCUSSION

### A. *Defendants' motion to dismiss*

#### 1. *Fed.R.Civ.P. 12(b)(6) standard*

On a motion to dismiss for failure to state a claim, "the court should not dismiss the complaint pursuant to Rule 12(b)(6) unless it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief' ". *Goldman v. Belden,* 754 F.2d 1059, 1065 (2d Cir. 1985) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)); *see also IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1052–53 (2d Cir. 1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994). The Second Circuit stated that in deciding a Rule 12(b)(6) motion, a court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transport Local 504,* 992 F.2d 12, 15 (2d Cir.1993); *see also Paulemon v. Tobin,* 30 F.3d 307, 308–09 (2d Cir.1994); *Rent Stabilization Ass'n of the City of New York v. Dinkins,* 5 F.3d 591, 593–94 (2d Cir.1993) (citing *Samuels,* 992 F.2d at 15).

It is not the Court's function to weigh the evidence that might be presented at a trial; the Court must merely determine whether the complaint itself is legally sufficient, *see Goldman,* 754 F.2d at 1067, and in doing so, it is well settled that the Court must accept the allegations of the complaint as true, *see Leeds v. Meltz,* 85 F.3d 51 (2d Cir.1996);

*LaBounty v. Adler,* 933 F.2d 121, 123 (2d Cir.1991); *Procter & Gamble Co. v. Big Apple Indus. Bldgs., Inc.,* 879 F.2d 10, 14 (2d Cir.1989), *cert, denied,* 493 U.S. 1022, 110 S.Ct. 723, 107 L.Ed.2d 743 (1990), and construe all reasonable inferences in favor of the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Leeds, supra,* 85 F.3d at 51; *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1099 (2d Cir.1988), *cert. denied,* 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989).

The Court is mindful that under the modern rules of pleading, a plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief", Fed.R.Civ.P. 8(a)(2), and that "[a]ll pleadings shall be so construed as to do substantial justice," Fed.R.Civ.P. 8(f).

The issue before the Court on a Rule 12(b)(6) motion "is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claim." *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995), *cert. denied,* —— U.S. ——, 117 S.Ct. 50, 136 L.Ed.2d 14 (1996) (citing *Scheuer, supra,* 416 U.S. at 235–36, 94 S.Ct. at 1686). Recovery may appear remote and unlikely on the face of the pleading, but that is not the test for dismissal under Rule 12(b)(6). *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995) (citing *Scheuer,* 416 U.S. at 236, 94 S.Ct. at 1686).

It is within this framework that the Court addresses the present motion to dismiss.

#### 2. *Malicious prosecution*

The plaintiffs' malicious prosecution claims seem to be based on the three-count criminal indictment alleging zoning and building violations. Indeed, the plaintiffs cite the following as their alleged injury for Counts I–VI:

> As a direct and proximate cause of the Defendants' acts, Plaintiffs, and each of them, suffered the denial, deprivations, and violation of their civil rights, privileges, and immunities of not being subject to a seizure of their person and property in a criminal proceeding without probable cause.

Amended Complaint ("Am.Compl.") ¶¶ 48, 57, 67, 90, 105, 102. In addition, the plaintiffs summarize their action as arising from a "Bad Faith Prosecution, brought without expectation of obtaining a valid conviction, . . . and solely to harass the plaintiffs for the pecuniary gain of the Defendant Town Supervisor of North Hempstead." Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss Complaint and in Affirmation of Plaintiffs' Cross Motion for Partial Summary Judgment ("Pl.Memo.") at 2.

In order to state a claim for malicious prosecution under New York State law, a plaintiff must demonstrate: (1) the initiation and continuation of criminal process against the plaintiff; (2) the lack of probable cause for commencing the proceeding, and; (3) actual malice as the motivation for the defendant's actions; (4) termination of the proceeding in the plaintiff's favor. *Murphy v. Lynn,* 118 F.3d 938, 947 (2d Cir.1997); *Russell v. Smith,* 68 F.3d 33, 36 (2d Cir.1995); *Rounseville v. Zahl,* 13 F.3d 625, 628 (2d Cir.1994); *see also Colon v. City of New York,* 60 N.Y.2d 78, 82, 455 N.E.2d 1248, 1250, 468 N.Y.S.2d 453, 455 (1983); *Martin v. City of Albany,* 42 N.Y.2d 13, 16, 364 N.E.2d 1304, 1307, 396 N.Y.S.2d 612, 614 (1977).

However, Section 1983 claims based on malicious prosecution are subject to a much more rigorous analysis as the result of the Supreme Court's decision in *Albright v. Oliver,* 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). In *Albright,* Illinois authorities issued an arrest warrant for the plaintiff, Kevin Albright, charging him with the sale of something which looked like a controlled substance. Upon learning of the warrant, he surrendered to the defendant, Detective Roger Oliver, but denied his guilt. He was released after posting bond upon, among other conditions, that he not leave the state without court permission. At a preliminary hearing, the court found probable cause to hold Albright for trial. At a subsequent pretrial hearing, the charges were dismissed on the ground that they failed to state an offense under Illinois law.

Albright then filed a Section 1983 lawsuit against Oliver alleging that his substantive due process right to be free from criminal prosecution, a "liberty interest," was violated under the Fourteenth Amendment. The case was appealed to the Supreme Court on the issue of whether such a constitutional right exists. With seven justices answering this question in the negative and six opinions, Chief Justice Rehnquist, joined by Justices Scalia, Ginsburg and O'Connor, recognized that Section 1983 " 'is not itself a source of substantive rights,' but merely provides 'a method of vindicating federal rights elsewhere conferred.' " *Id.* at 271, 114 S.Ct. at 811 (plurality Rehnquist, C.J.) (quoting *Baker v. McCollan,* 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 2694 n. 3, 61 L.Ed.2d 433 (1979)). The first step of the inquiry is to identify the constitutional right infringed, *Id,*

In conducting the analysis, the plurality recognized that where "a particular amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment not the more generalized notion of substantive due process, must be the guide for analyzing these claims.' " *Id.* at 273, 114 S.Ct. at 813 (quoting *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989)). Applying this standard, Chief Justice Rehnquist found that pretrial deprivations of liberty are addressed in the Fourth Amendment which protects against "unreasonable searches and seizures" and the issuance of warrants without probable cause. *Id.* Accordingly, the plaintiff's claim for malicious prosecution was held to be untenable under the rubric of substantive due process. *Id.* at 273–77, 114 S.Ct. at 813–14.

Chief Justice Rehnquist's determination that a Section 1983 malicious prosecution claim cannot be maintained as a violation of substantive process due process does not conclude the analysis. In his concurring opinion, which was joined by Justice Thomas, Justice Kennedy reasoned that although the Due Process Clause protects interests other than the freedom from personal restraint, and that some of those interests overlap with the common law of torts, "a state actor's random and unauthorized deprivation of [a due process] interest cannot be challenged under 42 U.S.C. § 1983 so long as the State

provides an adequate post-deprivation remedy." *Id.* at 284, 114 S.Ct. at 818 (Kennedy, J. concurring) (citing *Parratt v. Taylor*, 451 U.S. 527, 535–44, 101 S.Ct. 1908, 1913–17, 68 L.Ed.2d 420 (1981)). He found that a contrary approach would convert any tort committed by a state official into a Section 1983 claim. *Id.* Accordingly, because Illinois provides a remedy for malicious prosecution, the plaintiff should be unable to invoke a Section 1983 cause of action. *Id.* at 284–86, 114 S.Ct. at 819.

### a. *Constitutional injury*

The Second Circuit further developed the principles set forth in *Albright* in *Singer v. Fulton County Sheriff*, 63 F.3d 110 (2d Cir. 1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1676, 134 L.Ed.2d 779 (1996), and *Murphy*, 118 F.3d 938. In *Singer*, the plaintiff Daniel Singer, "a maverick in local politics" with an "ability to influence public opinion," was employed as a ranger by the New York State Department of Environmental Conservation. *Id.* at 112–13. On October 21, 1991, Singer received an emergency call that he join a search party forming to look for a missing hunter. On the way, he stopped at a local convenience store to pick up food supplies. According to the store clerk, Singer took the provisions, stated his circumstances, and advised the clerk that he would return later to pay for them. Singer claims the clerk consented the arrangement. The clerk disagreed.

Some time later Singer was arrested and charged with petty larceny. The charges were later dismissed in the "interests of justice" as "the prosecution was unable to locate its primary witness," the store clerk. *Id.* at 113. Singer then filed a complaint in federal district court alleging, among other things, two claims for malicious prosecution, one pursuant to Section 1983 and one under state common law. Granting summary judgment, the District Court dismissed both claims.

In affirming the decision of the District Court, the Second Circuit, interpreting *Albright*, recognized that "the Fourteenth Amendment right to substantive due process will not support a federal claim for malicious prosecution; however, *Albright*, does not bar [plaintiffs] from asserting a federal claim for malicious prosecution under the Fourth Amendment." *Id.* at 114. "Once a plaintiff presents a claim for malicious prosecution under § 1983, the court must engage in two inquiries: whether the plaintiff's conduct was tortious; and whether the plaintiff's injuries were caused by the deprivation of liberty guaranteed by the Fourth Amendment." *Id.* at 116.

Addressing the second issue first, namely, the constitutional injury, the court recognized that the inquiry begins with the common law of torts because " 'in some cases, the interests protected by a particular branch of the common law of torts may parallel closely the interests protected by a particular constitutional right.' " *Id.* (quoting *Carey v. Piphus*, 435 U.S. 247, 258, 98 S.Ct. 1042, 1049, 55 L.Ed.2d 252 (1978)). The validity of the claim however, must be judged against a specific constitutional standard; in the case of a malicious prosecution claim, the Fourth Amendment. *Singer*, 63 F.3d at 116.

"The Fourth Amendment right implicated in a malicious prosecution action is the right to be free of unreasonable seizure of the person—i.e., the right to be free of unreasonable or unwarranted restraints on personal liberty." *Id.* Accordingly, the plaintiff asserting a Section 1983 malicious prosecution claim must demonstrate a deprivation of liberty "consistent with the concept of 'seizure.' " *Id.* This added requirement is to ensure that any damages awarded for such a claim compensates for a *constitutional* deprivation. As a result, not all official conduct which might give rise to a malicious prosecution claim under state law would suffice to establish a similar claim under Section 1983.

In a novel constitutional decision, the Second Circuit in *Murphy, supra*, expanded the concept of a deprivation of liberty that would satisfy the requirement of a constitutional injury for the purpose of establishing a malicious prosecution claim. In *Murphy*, the plaintiff, Ernesto Murphy, had been charged with disorderly conduct and resisting arrest, both misdemeanors, and with two counts of felony assault, arising from a traffic stop initiated by John Lynn, one of the defendants, in Clarkstown, New York. Af-

ter arraignment of these charges, Murphy was released on his own recognizance, on the condition that he return to court when his appearance was required and that he not leave the State of New York while the criminal charges were pending. During the following year, Murphy made approximately eight court appearances.

The indictment was subsequently dismissed on speedy trial grounds, due to the prosecutor's failure to bring Murphy to trial within six months. Murphy then brought a Section 1983 action for false arrest, use of excessive force during the arrest and malicious prosecution, in violation of the First, Fourth, Fifth and Fourteenth Amendments, against Lynn and Weisberg, one of the police officers who had arrived at the scene, as well as the town of Clarkstown, its police department and its police chief. The district court dismissed all claims as barred by the statute of limitations. Murphy appealed only the dismissal of his Section 1983 claim of malicious prosecution and the Second Circuit reversed and remanded. Following the remand, a jury trial was held. At the close of evidence, the district court dismissed the claims against the town and its police department and the police chief. A verdict was returned in the plaintiff's favor and against Lynn. The defendants appealed, contending that they were entitled to a judgment as a matter of law. The defendants maintained that (1) the restriction on Murphy's ability to leave the State of New York did not implicate a constitutional right under the Fourth Amendment and (2) a speedy-trial dismissal is not a "favorable termination" of proceedings for the purposes of a claim of malicious prosecution.

The Second Circuit rejected the defendants' contentions and affirmed the jury award. On the issue of "seizure" under the Fourth Amendment, the Second Circuit noted that liberty deprivations are not limited to physical detentions. It went on to hold that the restriction of out-of-state travel imposed as a condition of release and the obligation to appear in court, constitute "seizures" within the meaning of the Fourth Amendment, stating as follows:

In the present case, one of the conditions imposed upon Murphy's release was that he not leave the State of New York pending resolution of the charges against him, an obvious curtailment of his otherwise unquestionable constitutional right to travel outside of the state. He was further obligated to appear in court in connection with those charges whenever his attendance was required. He indeed was called for court appearances some eight times during the year in which his criminal proceeding was pending. Under the authorities discussed above, therefore, we reject defendants' contention that the conditions imposed following the initiation of the criminal proceeding against Murphy carried no Fourth Amendment implications. We conclude that the restrictions imposed on Murphy constituted a seizure within the meaning of the Fourth Amendment.

*Murphy,* 118 F.3d at 946.

■ At the outset, in the present case, the Court recognizes that the Willners attempt to invoke the doctrine of substantive due process in order to maintain his claim. However, as discussed above, the Supreme Court has rejected such a theory of liability in *Albright.* Therefore, the Court grants the defendants' motion to dismiss as to the plaintiffs' claim of malicious prosecution in violation of substantive due process.

The Court notes that the criminal information was against David Willner, not Kerren Willner. *See* Affidavit of George P. Frooks in Support of Plaintiffs' Cross–Motion for Partial Summary Judgment ("Frooks Aff."), Exhibit ("Ex.") 3. However, the Court declines to consider the significance of this fact, if any, since the parties have not briefed this issue.

■ However, applying the above standards, the Court concludes that David Willner has alleged that he was "seized" within the meaning of the Fourth Amendment. David Willner was charged with a three-count criminal information. Although there are no allegations of an arrest or an otherwise physical detention by the defendants, David Willner was required to make court appearances. Consistent with the Second Circuit's decision in *Murphy,* this Court now

concludes that such allegations are sufficient to establish "seizure" under the Fourth Amendment for the purposes of a Section 1983 claim for malicious prosecution.

### b. *Favorable termination*

■ Termination of the criminal charges in the plaintiff's favor is an essential element of the claim of malicious prosecution. "Where the prosecution did not result in an acquittal, it is deemed to have ended in favor of the accused, for these purposes, only when its final disposition is such as to indicate the innocence of the accused." *Murphy*, 118 F.3d at 948 (citations omitted). A termination of criminal charges is indicative of innocence when the "failure to proceed 'impl[ies] a lack of reasonable grounds for the prosecution.'" *Id.* (citing *Loeb v. Teitelbaum*, 77 A.D.2d 92, 101, 432 N.Y.S.2d 487, 494 (2d Dep't 1980)). As the Second Circuit has noted upon a review of New York state law, certain dismissals such as for lack of subject matter jurisdiction and dismissals pursuant to N.Y.Crim. P.L. § 170.30(1)(a) for failure to allege sufficient facts to support the charge, are not sufficiently favorable to a defendant to be indicative of innocence. *Id.* (citations omitted). This is because "dismissals of these types may not end the state's pursuit of the accused on the same charges, for a renewed prosecution may be commenced in a proper court on a facially sufficient pleading." *Id.* at 948–49.

In *MacFawn v. Kresler*, 88 N.Y.2d 859, 860, 666 N.E.2d 1359, 1360, 644 N.Y.S.2d 486, 487 (1996), the New York Court of Appeals held that the plaintiff failed to state a cause of action for malicious prosecution arising from the dismissal of a criminal complaint pursuant to N.Y.Crim. P.L. §§ 170.30[1][a] and 170.35[1][a]. The dismissal was held to be on procedural grounds. *Id.* The merits of the underlying action were never reached. *Id.*

■ Under the standard enunciated above, the Court finds that the dismissal of Count I of the criminal information alleging a violation of grading and drainage, was not a favorable termination. Count I was dismissed because "[t]he accusatory instrument simply contain[ed] a conclusory repetition of the zoning ordinance and fail[ed] to allege any facts to establish a prima facie case." Frooks Af., Ex. 4. Thus, Judge Lally dismissed Count I on the ground of facial insufficiency. *See id.* As noted above, the dismissal of a charge for failure to allege sufficient facts to support a charge is not a favorable determination for the purpose of a claim of malicious prosecution. Therefore, the Court grants the defendants' motion to dismiss the plaintiffs' claim of malicious prosecution arising from Count I of the criminal information.

■ However, the Court concludes that the dismissal of Count II was a favorable determination. Judge Lally dismissed that count for the following reason:

> The undisputed testimony adduced at trial established that the defendant applied for and received a variance for the units after receiving the notice of violation. At the time of trial, the time for the variance had not yet expired and the defendant was planning to install the landscaping required by the variance as soon as the weather made it feasible. The People cannot charge the defendant with a violation of a zoning ordinance which may be mooted by compliance with the variance granted by the Town.

Frooks Aff., Ex. 4. Thus, Judge Lally believed that the dismissal was warranted by David Willner's receipt of a variance from the Town. The Court finds that the dismissal was indicative of David Willner's innocence. Hence, this Court concludes that the dismissal of Count II was a favorable determination.

■ Count III of the criminal information was dismissed on the defendants' motion prior to trial on the merits. Neither the amended complaint nor the parties' submissions indicate the reason for the dismissal. Therefore, it is impossible for the Court to conclude whether the dismissal of Count III constitutes a favorable determination. However, the Court notes that if Count III was dismissed in the interests of justice, such a dismissal will generally not be considered a disposition in favor of David Willner. *See Murphy*, 118 F.3d at 949. Since the plain-

tiffs do not allege that the dismissal of Count III of the criminal information was a favorable determination, an essential element of the claim of malicious prosecution, the Court grants the defendants' motion to dismiss the plaintiffs' claim of malicious prosecution arising from Count III for failure to state a cause of action.

### c. *Conclusion as to the claims of malicious prosecution*

For the reasons stated above, the Court grants the defendants' motion to dismiss the plaintiffs' claim of malicious prosecution arising from Counts I and III of the criminal information against David Willner but denies such claim arising from Count II.

### 3. *Abuse of process*

■ Section 1983 liability may lie for malicious abuse of criminal process. *Cook v. Sheldon,* 41 F.3d 73, 80 (2d Cir.1994). The torts of malicious prosecution and abuse of process are closely allied. "While malicious prosecution concerns the improper issuance of process, '[t]he gist of abuse of process is the improper use of process after it is regularly issued.'" *Id.* (quoting 2 Committee on Pattern Jury Instructions, Association of Supreme Court Justices, New York Pattern Jury Instructions § 351 at 816 (1968)). "[M]alicious abuse of criminal process is 'by definition a denial of procedural due process.'" *Id.* (quoting *Jennings v. Shuman,* 567 F.2d 1213, 1220 (3d Cir.1977)).

Since the only objection to the plaintiffs' claim of abuse of process is that no Section 1983 liability may be predicated on such a claim, and the Court has rejected this contention, the Court denies the defendants' motion to dismiss this claim.

### 4. *Deprivation of a property right*

■ The plaintiffs allege that they were deprived of their property right, which consists of "the house where they reside .... represented by their Certificate of Occupancy which runs with the land." Reply Memorandum of Law in Support of Plaintiffs' Motion and in Opposition to Defendants' Motion ("Pl. Reply Memo") at 1. The thrust of the plaintiffs' argument seems to be that the criminal process initiated by the defendants deprived the plaintiffs of their due process. *See id.* at 2. However, the plaintiffs have not alleged that they were deprived of this property right. They do not allege that the certificate of occupancy was revoked when the defendants initiated the criminal process. The plaintiffs maintain that the "[d]efendants have attempted to derive [sic] plaintiffs of a property interest protected by the U.S. Constitution." *See id.* at 1. The plaintiffs do not cite to, nor is the Court aware of, any case law which held a defendant liable under Section 1983 for an *attempt* to deprive a plaintiff of her or his property right. Therefore, the Court finds that the plaintiffs have failed to allege a cause of action for deprivation of their property right. Accordingly, the Court grants the defendants' motion to dismiss the plaintiffs' claim for deprivation of their property right.

### 5. *Equal Protection*

■ Simply stated, the Court finds that there are no allegations in the amended complaint that similarly situated people were treated differently sufficient to translate the plaintiffs' allegations into a cause of action under the equal protection clause.

### 6. *Immunity*

■ The defendants move pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the amended complaint for failure to state a claim upon which relief can be granted on the basis of immunity. At the outset, the Court notes that although immunity constitutes an affirmative defense, the Court may nevertheless consider this argument on a motion to dismiss because the defense is readily apparent on the face of the complaint. *See Richmond, Fredericksburg & Potomac R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir.1993) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 at 348–49 (2d ed.1990)).

The defendants contend that they are entitled to immunity on two grounds: (1) the defendants are entitled to qualified immunity because the plaintiffs have failed to allege a clearly established property right, *see* Reply

Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended Complaint ("Def. Reply Memo") at 8; and (2) the defendants were acting in their judicial or quasi-judicial capacity and therefore, absolute and Eleventh Amendment immunities shield them from any liability.

First, since the Court has dismissed the plaintiffs' claim for deprivation of their property right, the defendants' first basis for qualified immunity is moot.

Second, the claims against these defendants arise from the authorization, initiation and continuation of the criminal information against David Willner. The Court finds that the individual defendants were acting in their judicial capacity in prosecuting David Willner. Thus, Alberto, Newburger, Schroeter and Zarny, in their individual and official capacities, are immune.

### i. *Individual capacity*

■ "Absolute immunity confers complete protection from civil suits." *Tulloch v. Coughlin,* 50 F.3d 114, 116 (2d Cir.1995) (distinguishing absolute immunity from qualified immunity which protects government officials from civil suit if the official did not violate a clearly established right that a reasonable person would have been aware of, or it was objectively reasonable for the official to believe that his actions would not violate a clearly protected right). Absolute immunity applies only to a limited class of officials and functions. "Such immunity extends to prosecutors, *Imbler v. Pachtman,* 424 U.S. 409, 430–31, 96 S.Ct. 984, 994–96, 47 L.Ed.2d 128 (1976); to executive officers initiating administrative proceedings, *Butz v. Economou,* 438 U.S. 478, 515–17, 98 S.Ct. 2894, 2915–16, 57 L.Ed.2d 895 (1978); to government attorneys defending civil suits, *Barrett v. United States,* 798 F.2d 565, 572 (2d Cir.1986); and to government attorneys who initiate civil suits, *Augustyniak v. Koch,* 588 F.Supp. 793, 797 (S.D.N.Y.), *aff'd,* 794 F.2d 676 (2d Cir. 1984), *cert. denied,* 474 U.S. 840, 106 S.Ct. 123, 88 L.Ed.2d 101 (1985)." *Spear v. Town of West Hartford,* 954 F.2d 63, 66 (2d Cir.), *cert. denied,* 506 U.S. 819, 113 S.Ct. 66, 121 L.Ed.2d 33 (1992). In extending prosecutorial immunity to the executive branch, the Supreme Court explained that "agency officials performing certain functions analogous to those of a prosecutor should be able to claim absolute immunity with respect to such acts." *Butz,* 438 U.S. at 515, 98 S.Ct. at 2915. "The reasoning of *Butz* applies not only to federal agency officials, but also to local executive officers." *Spear,* 954 F.2d at 66 (citations omitted).

The Second Circuit has interpreted the absolute prosecutorial immunity defense to include "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." *Dory v. Ryan,* 25 F.3d 81, 83 (2d Cir.1994). A claim of malicious prosecution challenges prosecutorial actions taken within the judicial phase of the criminal process, and thus is barred by absolute immunity. *Day v. Morgenthau,* 909 F.2d 75, 77 (2d Cir.1990).

■ Under this line of immunity case law, the Court concludes that Alberto, Newburger, Schroeter and Zarny are absolutely immune from damages, in their individual capacity, as to the plaintiffs' claims of malicious prosecution. The Court further concludes that these defendants are absolutely immune from the plaintiffs' claims of abuse of criminal process. The criminal information was filed on behalf of the State of New York. *See* Frooks Aff., Ex. 3. The plaintiffs do not allege that the defendants do not have the authority to begin a criminal process to enforce the building or zoning codes. The plaintiffs' claims of malicious prosecution and abuse of process arise from the criminal information against David Willner. The initiation of the prosecution and the presentment of the State's case against David Willner is intimately associated with the judicial phase of the criminal process. *See Imbler v. Pachtman,* 424 U.S. 409, 431, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976). As such, the Court grants the defendants' motion to dismiss the malicious prosecution and abuse of process claims for damages as against Alberto; Newburger, Schroeter and Zarny, in their individual capacities.

### ii. *Official capacity*

The Court finds that David Willner's claims against Alberto, Newburger, Schroe-

ter and Zarny, in their official capacities, must fail because the defendants, as officials representing the state, are protected by the Eleventh Amendment. The Eleventh Amendment prevents state governments from being sued in federal court under Section 1983. *See Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). "When prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county." *Ying Jing Gan v. City of New York,* 996 F.2d 522, 536 (2d Cir.1993) (citing *Baez v. Hennessy,* 853 F.2d 73, 77 (2d Cir.1988), *cert. denied,* 488 U.S. 1014, 109 S.Ct. 805, 102 L.Ed.2d 796 (1989)). Although Section 1983 imposes liability on every "person" who under the color of state law deprives another of a federal right, neither a state nor a state official sued in his official capacity is a "person" within the meaning of Section 1983. *See id.*

In the present case, as is apparent from the criminal information, Alberto, Newburger, Schroeter and Zarny represented the State of New York in prosecuting David Willner. *See* Frooks Aff., Ex. 3. As such, these defendants, in their official capacities, may invoke the Eleventh Amendment immunity as an affirmative defense to the plaintiffs' Section 1983 claims of malicious prosecution and abuse of process. Therefore, the Court concludes that David Willner's claims for damages against Alberto, Newburger, Schroeter and Zarny, in their official capacities, fail to state claims upon which relief can be granted.

### 7. *Municipal liability*

Municipalities are subject to liability under section 1983 for alleged violations of an individual's constitutional rights resulting from a municipal policy or custom. *See Board of County Commissioners of Bryan County, Oklahoma v. Brown,* —— U.S. ——, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); *Monell v. Department of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). This principle applies to the claims against the Town and the individual defendants who are alleged to have acted under color of state law in their official capacities. *See Hafer v.*

*Melo,* 502 U.S. 21, 22–27, 112 S.Ct. 358, 361–62, 116 L.Ed.2d 301 (1991) (distinguishing between suits against municipal officers in their official and individual capacities and recognizing that a suit against individuals in their official capacities "should be treated as a suit against the State").

However, the Supreme Court has recognized that municipal liability may be based on the single decision where the action at issue is directed by those who establish government policy. *Brown,* —— U.S. ——, 117 S.Ct. 1382; *Pembaur v. Cincinnati,* 475 U.S. 469, 480–81, 106 S.Ct. 1292, 1298–99, 89 L.Ed.2d 452 (1986); *Weber v. Dell,* 804 F.2d 796, 803 (2d Cir.1986), *cert. denied,* 483 U.S. 1020, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987). While the existence of a policy or custom justifying liability under section 1983 is a question of federal law, whether the official had final policy making authority is a question of state law. *Pembaur,* 475 U.S. at 483, 106 S.Ct. at 1300.

Section 1983 does not impose liability upon a municipality or its supervisory officials solely on the basis of *respondeat superior. Monell,* 436 U.S. at 694, 98 S.Ct. at 2037–38. To establish municipality's liability on the basis of acts by its lower echelon employees, a violation of constitutional rights based on policy or custom must be demonstrated. *Id.* at 690, 694, 98 S.Ct. at 2035–36, 2037–38. "The inference that a [constitutionally deficient] policy exist[s] may ... be drawn from circumstantial proof, such as evidence that the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction." *Ricciuti v. New York City Transit Auth.,* 941 F.2d 119, 123 (2d Cir.1991).

Three elements are necessary to state a cause of action for municipal liability, namely, "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir. 1995) (quoting *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983)). Applying these standards, the Court reviews the defendants' mo-

tion with respect to the plaintiffs' Section 1983 claims against the Town.

 Initially, the defendants contend that the plaintiffs' constitutional claims against the Town must be dismissed for failure to allege sufficient facts to support these claims. At the outset the Court notes that Section 1983 claims brought against a municipality are not subject to a higher pleading standard than required under Fed.R.Civ.P. 8(a). *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 1161, 122 L.Ed.2d 517 (1993); *see also Blue v. Koren,* 72 F.3d 1075, 1083 n. 4 (2d Cir.1995) (citing *Leatherman*). Accordingly, to survive the defendants' Rule 12(b)(6) motion, the plaintiffs need only allege "a short and plain statement of the claim[s] showing that the [plaintiffs are] entitled to relief." Fed. R.Civ.P. 8(a)(2); *Leatherman,* 507 U.S. at 167–69, 113 S.Ct. at 1163.

 Reviewing the amended complaint pursuant to the criteria set forth above, the Court finds that while the plaintiffs' allegations are somewhat generally pled, they are not so deficient as to warrant dismissal. The Court finds that the plaintiffs present numerous legal theories against the Town. First, the plaintiffs allege a municipal policy. *See* Am. Compl. ¶¶ 124, 136. Second, they allege *respondeat superior. See* Am. Compl. ¶¶ 138, 140, 141, 143, 153. Third, they allege supervisory liability. *See* Am. Compl. ¶¶ 126, 127–131, 141–142.

To the extent that the plaintiffs premise municipal liability based on *respondeat superior,* the Court grants the defendants' motion to dismiss for failure to state a claim. Citing *Zahra,* 48 F.3d at 685, the defendants contend that "[m]ore than a mere assertion is needed to show that a municipality has a custom or policy tending to support, at least circumstantially, such an inference." Def. Reply Memo at 7. However, the defendants in *Zahra* had moved to dismiss after the close of evidence at trial. While it is true that to defeat such a motion more than a mere assertion that a municipality has a custom or policy is necessary, the same standard does not apply to a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).

In the Court's view, the amended complaint satisfies the pleading requirements of Fed.R.Civ.P. 8. The allegations are sufficient to put the Town on notice of their allegedly unlawful conduct and any relevant attendant circumstances. Moreover, in a case such as this, where it is not reasonable for the Court to expect that the plaintiffs be familiar with the full range of the defendants practices under challenge, *see Frazier v. Southeastern Pa. Transp. Auth.,* 785 F.2d 65, 68 (3d Cir.1986); *District Council 47 v. Bradley,* 795 F.2d 310, 313 (3d Cir.1986) (quoting *Frazier* ), dispositive motions with respect to Section 1983 claims are better left for summary judgment. *Leatherman,* 507 U.S. at 165–67, 113 S.Ct. at 1162. Accordingly, the defendants' motion to dismiss with respect to the plaintiffs' Section 1983 claims against the Town based on a failure to plead with sufficient particularity, is denied.

In addition, the defendants maintain that since the action against Alberto, Newburger, Schroeter and Zarny, in their official capacities, is equivalent to a suit against the Town, it would be redundant to allow this action to proceed against the individual defendants and the Town. However, the defendants overlook the fact that the plaintiffs present different legal theories for recovery, including supervisory liability. Since the plaintiffs' claims for declaratory judgment against all defendants remain as well as the plaintiffs' claim for money damages against the Town, the Court finds that to proceed against all defendants is appropriate.

### 8. *Punitive damages*

Since the Court has concluded that Alberto, Newburger, Schroeter and Zarny, in their individual and official capacities, are immune from the plaintiffs' Section 1983 claims for damages, the issue of punitive damages against these defendants is moot. Hence, the Court grants the defendants' motion to dismiss the plaintiffs' claim of punitive damages against Alberto, Newburger, Schroeter and Zarny.

Upon a review of the amended complaint, the Court finds that the plaintiffs are not seeking punitive damages against the Town.

*See* Am. Compl. at 50. Therefore, the issue of punitive damages against the Town is moot.

### 9. *Intentional infliction of emotional distress*

██ The plaintiffs allege a claim for the intentional infliction of emotional distress. In New York, to survive a motion to dismiss, allegations of intentional infliction of emotional distress,

> must satisfy the rule set out in Restatement of Torts, Second, which [the New York Court of Appeals] adopted in *Fischer v. Maloney,* 43 N.Y.2d 553, 557, 402 N.Y.S.2d 991, 373 N.E.2d 1215 [ (1978) ]. . . . "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress. . . . Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

*Murphy v. American Home Products Corp.,* 58 N.Y.2d 293, 303, 448 N.E.2d 86, 90, 461 N.Y.S.2d 232, 236 (1983); *see also Bender v. City of New York,* 78 F.3d 787, 790 (2d Cir.1996). The New York courts have been extremely strict in applying these principles. *Martin v. Citibank, N.A.,* 762 F.2d 212, 220 (2d Cir.1985). In 1993, the New York Court of Appeals noted that under these standards, every claim for intentional infliction of emotional distress that the court reviewed failed because the conduct alleged was not sufficiently outrageous. *Howell v. New York Post Co., Inc.,* 81 N.Y.2d 115, 122, 612 N.E.2d 699, 702, 596 N.Y.S.2d 350, 353 (1993).

██ Applying these rigorous standards, the Court finds that the plaintiffs' claim for intentional infliction of emotional distress fails as a matter of law. There are no allegations contained in the complaint which, if true, would constitute conduct so outrageous to give rise to a claim for intentional infliction of emotional distress. Accordingly, the defendants' motion to dismiss the intentional infliction of emotional distress cause of action for failure to state a claim, is granted.

### B. *Declaratory judgment*

██ Other than monetary damages, the plaintiffs also request declaratory judgment that "the acts, customs, practices, and policies complained . . . [of in the amended complaint] are illegal and unconstitutional." *See* Am. Compl. at 50. The plaintiffs further request that a judgment be entered "adjudging, decreeing, and declaring the rights and other legal remedies of the parties to the subject matter . . ., in order that such declarations shall have the force and effect of final judgment." *See id.* The Eleventh Amendment and absolute immunities only apply to Section 1983 claims for damages and do not bar a claim for declaratory judgment. Since the defendants did not move to dismiss the plaintiffs' claims for declaratory judgment, the plaintiffs' claims which the Court has held state valid causes of action, will remain.

### C. *The plaintiffs' motion for summary judgment*

#### 1. *Summary judgement standard*

A court may grant summary judgment only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact, *Samuels v. Mockry,* 77 F.3d 34, 35 (2d Cir. 1996), and the movant is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *see also* Fed.R.Civ.P. 56(c) (setting forth summary judgment standard). The Court must, however, resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. *See Quaratino v. Tiffany & Co.,* 71 F.3d 58, 64 (2d Cir.1995); *Twin Laboratories, Inc. v. Weider Health & Fitness,* 900 F.2d 566, 568 (2d Cir.1990); *W.A. Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11–12 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

According to the Second Circuit "[s]ummary judgment is a tool to winnow out from the trial calendar those cases whose facts

predestine them to result in a directed verdict." *United Nat'l Ins. Co. v. Tunnel, Inc.,* 988 F.2d 351, 355 (2d Cir.1993). Once a party moves for summary judgment, the nonmovant must come forward with specific facts showing that a genuine issue exists to avoid the motion being granted. *West–Fair Elec. Contractors v. Aetna Cas. & Surety Co.,* 78 F.3d 61, 63 (2d Cir.1996); *see also Western World Ins. Co. v, Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990) (quoting Fed. R.Civ.P. 56(e)). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510; *see Vann v. New York City,* 72 F.3d 1040, 1049 (2d Cir.1995).

However, mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment. *See Kulak v. City of New York,* 88 F.3d 63, 71 (2d Cir.1996). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the nonmovant, summary judgment is unavailable. *See Holt v. KMI–Continental, Inc.,* 95 F.3d 123, 129 (2d Cir.1996); *Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir.1991). Finally, the Court is charged with the function of "issue-finding", not "issue-resolution." *Gallo v. Prudential Residential Services, Ltd. Partnership,* 22 F.3d 1219, 1224 (2d Cir.1994).

It is within this framework that the Court addresses the grounds for the present motion for summary judgment.

### 2. *Counts IV and V*

According to the plaintiffs' Notice of Motion, they move for summary judgment as to Count IV of the amended complaint. However, in their moving papers, the plaintiffs request summary judgment as to Count V of the amended complaint. In addition, the Reply Affirmation of George P. Frooks requests that summary judgment be granted as to Counts IV and V of the amended complaint. *See* Reply Affirmation of George P. Frooks ¶ 8. Counts IV and V of the amended complaint allege malicious prosecution and abuse of process against Schroeter and Alberto, respectively. Since the Court has concluded that Schroeter and Alberto are immune from

these claims for damages, both in their individual and official capacities, the plaintiffs' cross—notion for summary judgment for money damages, as to Counts IV and V, are moot.

 As to the plaintiffs' motion for summary judgment for declaratory judgment as to Counts IV and V, the Court finds that further development of the factual record is necessary. For example, the parties dispute as to whether probable cause, an essential element of the tort of malicious prosecution, existed for the execution of the criminal information. The parties dispute the process for the approval of drainage plans. Specifically, the plaintiffs maintain that drainage plans are approved prior to the issuance of a certificate of occupancy. However, the defendants contradict this by contending that detailed drainage plans of storm water flow over landscaped areas are not required prior to the issuance of a certificate of occupancy. *See* Affidavit of Robert Schroeder ¶ 8. Rather, they maintain that drainage is a field condition that is reviewed when complaints are received. *See id.* The Court notes that discovery had not commenced before the plaintiffs moved for summary judgment. The Court finds that it can better evaluate the plaintiffs' claims after discovery is complete, if such a motion is then made.

### D. *Motion to amend*

In the event that the Court dismisses any of the plaintiffs' claims for failure to state a cause of action, the plaintiffs request leave to amend the complaint. Thus, the Court grants the plaintiffs thirty days from the date of this Memorandum Decision and Order to serve a second amended complaint upon the defendants as to their claims of: (1) malicious prosecution arising from Count III of the criminal information; and (2) violation of the Fourteenth Amendment equal protection clause.

### III. CONCLUSION

Having reviewed the parties' submissions and for the reasons set forth above, it is hereby

ORDERED, that the defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), as to the plaintiffs' claims for compensatory and punitive damages against Donald Alberto, May W. Newburger, Robert Schroeter and Philip Zarny, in their individual and official capacities, is granted; it is further

ORDERED, that the defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), as to the plaintiffs' claims of malicious prosecution in violation of the Fourteenth Amendment substantive due process clause, is granted; it is further

ORDERED, that the defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), as to the plaintiffs' claims of violation of the Fourteenth Amendment equal protection clause, is granted; it is further

ORDERED, that the defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), as to the plaintiffs' claims arising from the deprivation of their property rights, is granted; it is further

ORDERED, that the defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), as to the plaintiffs' claims of malicious prosecution arising from Counts I and III of the criminal information against David Willner, in violation of the Fourth Amendment, seeking declaratory judgment against the defendants, is granted; it is further

ORDERED, that the defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), as to the plaintiffs' claims of malicious prosecution arising from Count II of the criminal information against David Willner, seeking declaratory judgment against the defendants, is denied; it is further

ORDERED, that the defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), as to the plaintiffs' claims of abuse of process, seeking declaratory judgment against the defendants, is denied; it is further

ORDERED, that the defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), as to the plaintiffs' claim against the Town of North Hempstead, is denied; it is further

ORDERED, that the defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), as to the plaintiffs' claim of intentional infliction of emotional distress, is granted; it is further

ORDERED, that the plaintiffs' motion for summary judgment pursuant to Fed.R.Civ.P. 56, as to Counts IV and V of the amended complaint, is denied; and it is further

ORDERED, that if the plaintiffs' desire to serve a second amended complaint as to their claims of: (1) malicious prosecution arising from Count III of the criminal information; and (2) violation of the Fourteenth Amendment equal protection clause, the plaintiffs shall serve such a second amended complaint upon the defendants within thirty (30) days of the date of this Order.

**SO ORDERED.**